The next case on the calendar is S.U.C. v. Smith. S.U.C. v. McGinn, S.U.C. v. Smith, Inc. May I, Your Honor? Yes, please. Good morning, Your Honors, and may it please the Court. My name is Justin Weddle, and I'm here on behalf of the defendant appellant, David Smith. This case is about whether the Court will continue to enforce a void S.E.C. judgment against David Smith that violates the statutory limits of the S.E.C.'s power. The real question is, why does the S.E.C. want to continue, prospectively, to enforce this judgment even though it's plainly unlawful? There are two possible answers I respectfully submit. Are you talking about it being unlawful after Lew? S.E.C. v. Lew? Is that your argument? The argument, Your Honor, is almost that. It's slightly different. The argument is that Lew described the contours and the limitations and the prohibitions that have been contained in the S.E.C.'s laws since they were enacted. According to that description and interpretation by Lew, this disgorgement order was nothing like what is permitted by the S.E.C.'s laws that have been on the books for decades.  And there's no indication that Lew is retroactive? Your Honor, Lew is not I believe that Lew is the decisive interpretation of the laws. The laws have been on the books since the 1930s. And those laws have not changed, although we have an argument in our case about a recent amendment to those laws which supports our position. But in terms of the power to issue disgorgement as a remedy for a securities law violation, that power has not changed at any time that's relevant to the case with that one exception that I mentioned. Lew described what that power means. And Lew, in fact, said that under those statutes, the S.E.C. is prohibited from extracting a penalty for penalizing people under the guise of a disgorgement order. That's always been the case. And so this is not a question of retroactivity or a change in the law. This is a question of... Although this Court has affirmed that disgorgement order, has it? Yes, it did, Your Honor. This Court affirmed the disgorgement order. Just checking. And it did so based on an erroneous reading of the statute. That all... I mean, to be fair, this Court, for decades, overread the S.E.C.'s ability to obtain, to extract penalties from people under the guise of disgorgement, as did every other circuit court. As did every other district court in the country. And, in fact, during one of the oral arguments, I think it was in the Lew case, the S.E.C.'s lawyer, or I can't remember who was arguing on behalf of the S.E.C., but whoever was arguing on behalf of the S.E.C. said to the Court, this is how we've been doing it for decades, for 50 years, Your Honors. And Justice Gorsuch said, well, not in this Court we haven't been. So it is true that all lower courts have permitted this extension, this unlawful extension of the S.E.C.'s penalty power, but that doesn't make it right, and that doesn't mean that such an illegal judgment should be given prospective effect. Let's assume for the moment we agree with everything you just said, just an assumption. Aren't you, in effect, asking us to disregard our own precedent in Romerill in extending relief under Rule 60 at this juncture to your client? No, I'm not, Your Honor, and I'll say why. Romerill does not control the case because Romerill fundamentally was a case about a knowing and voluntary waiver of a personal constitutional right that belonged to Mr. Romerill, and it was a waiver  other portions of the agreement. The discussion in Romerill about the scope of Rule 60b-4 was unnecessary to that decision because all aspects of that decision were covered by and could have been decided by the waiver. There's nothing like such a waiver in this, or I should also say that in Romerill, Mr. Romerill essentially was asking to have his cake and eat it, too, because the consent order in Romerill said he would not essentially criticize the SEC, and the SEC would cease to pursue its enforcement action against him. If he wanted to criticize the SEC, notwithstanding that agreement, the agreement itself had a remedy for breach, and the remedy was that the case would be reinstated to the active docket of the district court, and so he would be pursued in that enforcement action by the SEC. He was asking to escape the gag order yet not have the enforcement action continue. There's nothing like that here. Mr. Smith has been fighting this action throughout. Mr. Smith has been amply punished for any violations. He served over six and a half years in prison. He was subject to criminal financial penalties. He was subject to this action. He personally received $1.7 million in profit from the violation, and he and his family members have had extracted from them about $6 million. He's paid what is a proper disgorgement order many times over, and if I may, just before my time is up, Your Honor, I wanted to add that the SEC's brief talks about concerted action and essentially says, notwithstanding Lew and notwithstanding our misunderstanding about the limits of our power for the last 50 years, it was shared by many courts, lower courts, that have now been corrected by Lew, we can keep doing exactly the same thing because Lew mentioned an 1874 case that had to do with concerted action, complicit action by general partners. And they say this is exactly like that because there was commingling and David Smith and Tim McGinn were bad, and they acted together. I respectfully submit that that is a red herring, Your Honor. There were two things at play in the lower court decision. One was, what happened to the profit from the violation? It is clear as day that what happened to the profit is that David Smith and his family members only received $1.7 million. It's clear as day the SEC's accountant's chart analyzing every bank transaction is in volume two of the appendix. The portions that are the fraud proceeds are highlighted in a color that I don't know how to describe, but it's sort of reddish brown. There's a second issue that was at play in the district court, and the other issue was, what assets that were held in trust or that were in Lynn Smith's name Lynn Smith is David Smith's wife, which assets that are held in trust or held in Lynn Smith's name are really David Smith's assets so that they can be seized in payment of David Smith's debts? That issue, that second issue, is where commingling came into play. The district court said, well, the trust assets and David Smith's expenditures were commingled. Lynn's assets and David's assets were commingled, and those distinctions in ownership were not respected, and so all of those assets held by the trust or in the name of Lynn Smith can be treated as David Smith's assets, and David Smith's assets can be seized to pay David Smith's debt. But the problem is that the debt that the SEC would like to hold him responsible for is nearly $100 million, which is an unlawful debt. So if his debt was $1.7 million, fine. You can take commingled assets from the trust to pay the $1.7 million. But commingling is irrelevant to the question of whether David Smith's disgorgement order is itself proper. The amount of the fraud which went on for six years was $100 million, wasn't it? The fraud on the individuals who invested in these fraudulent vehicles. It was not, Your Honor. The court order was based on a simple calculation that said investors had put in X amount of money and had received back Y amount of money, and if you do the math on X and Y, the remainder is about $87 million. Then the court added a bunch of interest to that to get to the $100 million. We can talk about whether there was any proof about the amount that was caused by fraud or not caused by fraud, but no matter what, the money, whatever the money is, if you call it $87 million or $100 million, it was not received by David Smith. It went into various different entities. It was used by those entities to pay expenses of the entity, to pay employees, to pay rent, to make legitimate investments. They lost a lot of money on those investments and some of the money was paid to the key violators who were both convicted of criminal conduct in this case, and those are David Smith and Tim McGinn. David Smith received $1.7 million. That's it. The rest of the money stayed in the entities or was paid out to Tim McGinn or was paid out on these other legitimate expenses. The amount of the investors' losses, even if you assume it was all caused by fraud, which I think is not a fair assumption, doesn't change the personal profit that went to David Smith. The SEC also says that David Smith didn't come forward with expenses to offset that. That also, I think, is a red herring because the expenses would come into play if you took the $1.7 million in the color-coded chart and then you said, well, part of the $1.7 million is legitimately for my time and effort and a reasonable salary would be X, or I had these travel expenses that should reduce the $1.7 million. We're not making that argument. This was a fraudulent scheme from day one. They took money from investors and invested it in God knows what, but the investors got back nothing. Isn't that true? No, that's not true, Your Honor. How much did they get back? They've gotten back about 25% of their investments. And why is that relevant since these were all decided already by courts in this circuit, the numbers on which we are relying? Because the number that was used is plainly prohibited by the statutes as the Supreme Court has explained in the Liu case. And to continue to why does the SEC want to prospectively enforce this judgment of $100 million? In their papers below, the SEC and the receiver both stated that they had no expectation that David Smith would ever pay anything toward this judgment anymore. All of his assets and his family's assets were seized on day one. He served six and a half years in prison. He's 77 years old, I think, maybe 78 by now. But no one thought that he's going to pay any more money. Why do they want to hold this over him? They want to continue to punish him. They want to keep a cloud over his head. And punishment of $100 million is a valid reason for entering the judgment in the first place, and it's even less of a valid reason to maintain the judgment into the future. I'm happy to keep talking, Your Honor, but I see that my time has been up for about five minutes.  May it please the Court, Arjit Ramkumar for the Securities and Exchange Commission. Why does the SEC want to punish David Smith? I was just told that's their only motive in this case. So, Your Honor, before I answer that question, I want to briefly address the procedural vehicle from which this appeal arises, which is  the denial of a Rule 60b-4 motion, and that is significant because in SEC v. Romero, which Judge Livingston just touched on, this Court reaffirmed the longstanding rule that a litigant can prevail on a Rule 60b-4 motion only if it can demonstrate a complete lack of subject matter or personal jurisdiction or a due process violation consisting of a deprivation of notice and the opportunity to be heard. So it's a narrow rule under which Mr. Smith is seeking relief. We agree with that, but counsel argues that it was that the fact that it was void deprives the Court of, I guess, jurisdiction. Is that the argument? So that appears to be one argument that Smith makes, Your Honor, and the Commission disagrees and would point this Court to both Bronson and the Philip Morris case that we cite on page 18 of our brief. So in Bronson, what this Court noted is that arguments about alleged remedial overreach pertain to at most equitable jurisdiction, but that is fundamentally different from subject matter and personal jurisdiction, and the D.C. Circuit in the Philip Morris case made the same distinction between alleged remedial overreach on the one hand and subject matter and personal jurisdiction on the other hand. And this Court has time and time again been unequivocal that Rule 60B-4 motions predicated on alleged jurisdictional defects must demonstrate a lack of subject matter or personal jurisdiction in order for those motions to be cognizable. Does the SEC agree that reading Lew and understanding the limits of disgorgement that Smith's profits amounted to $1.7 million and if we were proceeding today forward, that's where the disgorgement order should have been capped? The Commission does not agree, Your Honor, and just one other procedural point. So when the judgment was entered in 2015 and Smith appealed to this Court, he did not advance a number of arguments he makes now. Notably, he did not make arguments pertaining to joint and several liability and prejudgment interest, and that is critical because he disclaims promising his motion on a change in the law, and it is well settled in the circuit that Rule 60B motion is not a substitute for a timely appeal. But turning to the $1.7 million figure, that argument is based on a single exhibit, Exhibit 26, to the Palin Declaration. As the Commission demonstrated below, however, Smith held ill-gotten gains in other places besides his checking account, and that exhibit only examines relevant transactions in his checking account. So in particular, ill-gotten gains were held in Smith's wife's stock account, and as the District Court found on page 259 of the appendix, Smith exercised unfettered control over that stock account, and indeed the stock account was subject to the asset freeze that this Court affirmed because it included ill-gotten gains. On page 241 of the appendix, the District Court observed that funds from the stock account were commingled with funds in other places as well. And then on page 172 of the appendix, the Palin Declaration observes that more than $2 million were transferred from the stock account to the checking account, and the majority of that money was used to fund Smith's personal expenses related to country club expenses and his vacation homes. So for all of those reasons, the Commission does not agree with the $1.7 million figure that Smith has set forth, but in any event, taking a step back, even if Smith were correct on that front, it would not entitle him to relief under Rule 60b-4 because that alleged defect is neither jurisdictional nor a due process violation. Unless the Court has any other questions, the Commission would respectfully request that this Court affirm for the reasons articulated in the Commission's briefs. Well, I have a couple of questions. Sure. Mr. Smith argues that because you relied on an interpretation since found wrong by the Supreme Court, that that deprives the Court of both subject matter jurisdiction and personal jurisdiction over the defendant, over Smith. Tell me why he's wrong about that. Sure. So I have two responses, Your Honor. The first goes back to something I said moments earlier, which is that alleged remedial overreach or so-called equitable jurisdiction is fundamentally different from subject matter or personal jurisdiction, and this Court has been clear that Rule 60b-4 motions, in order to be successful, must be predicated on a lack of subject matter or personal jurisdiction. And here, the discordship order does not implicate either subject matter or personal jurisdiction. But setting that aside, the Commission would submit respectfully that the discordship order here is entirely consistent with lieu, and I would be happy to walk through that, starting with joint and several liability. So in lieu, what the Supreme Court held is that joint and several discordship awards are appropriate in situations where concerted wrongdoing occurs, and the Commission would submit that that is an apt description of what occurred here. McGinn and Smith were convicted of engaging in a criminal conspiracy, the precise description of concerted wrongdoing. And then in lieu, the Supreme Court also noted that courts must account for legitimate business expenses, but after lieu, in SEC v. Fowler, this Court noted that the onus is still on the defendant to identify with particularity what legitimate expenses must be accounted for. Smith never explains what the Court was required to account for in terms of business deductions before imposing the discordship award, and as a result, that is not an issue here either. And then, lieu says nothing about prejudgment interests, which is Smith's third argument, and it also says nothing about receiverships, his fourth and final argument. So, if I understand you, you say that Mr. Smith may have an argument about lieu, but that he used the wrong vehicle when he brought it under 60B-4. So, certainly the Commission believes that Rule 60B-4 is the wrong vehicle. The Commission also believes, however, Your Honor, that the discordship award here is entirely consistent with lieu, for the reasons I just stated. So, even after lieu, the Commission would have made the same award? Yes, Your Honor. So, the last thing that opposing counsel said was that the SEC seemed to want to punish Mr. Smith. Is that legitimate comment before us? No, Your Honor, and I believe your previous questions touched on this point. This judgment is extremely old, and the investors have only recovered a quarter of what they put in, and as a result, the Commission is simply seeking to enforce its investor protection mission and ensure that the investors recover as much money as they can. The receiver is planning a fourth distribution pending the outcome of this appeal. So, the Commission would disagree with that characterization of its actions. Thank you. Thank you, Your Honors. Thank you, Your Honors. Opposing counsel says this Court has said time and again that Rule 64 is only permitted for subject matter jurisdiction and personal jurisdiction and notice issues. Isn't that correct? That's not correct, Your Honor. That was said once in Romerill, and as I said before, that was a statement that was unnecessary to the decision in Romerill, which was a highly distinguishable decision. This Court's decision in Crosby against  it, it said that a judgment was void because it violated the First Amendment. Romerill essentially tried to limit the scope of Crosby, but I think there's another part of Crosby that's extremely important here, Your Honor, which is that in Crosby, Mr. Crosby, Stanford Crosby, there were two Mr. Crosbys in the case, moved for relief under 60B-5 and 60B-6, both of which are discretionary provisions of the rule, whereas 60B-4 is not. And Crosby said notwithstanding that, they are declaring or providing relief from the judgment under 60B-4. So if this Court decided that 60B-4 was the wrong vehicle, this Court should grant relief under any of the other subparagraphs of Rule 60B that are applicable. And I respectfully submit that that would be appropriate. There's no reason for, there's no equitable reason, there's never been an equitable reason to impose unlawful punishments on Mr. Smith, and there's no equitable reason to prospectively hang this unlawful judgment over his head. And we're asking primarily for prospective relief. I think what's really going on here, and in the 60B-4 case law, there's a concern of opening the floodgates. And, you know, the other litigants' right to challenge unlawful disgorgement orders that have been extracted from them by the SEC over the years is not before the Court and should not stand in the way of doing the right thing, but there are a number of limiting principles here. This is a live case. The last court order issued by the District Court was in November 2022. The order that we're talking about and the relief that we're primarily asking for is prospective relief. Stop enforcing or holding a unlawful judgment over David Smith for the rest of his life. Leave him in peace. He's served his time. And third, Your Honor, the money that we're secondarily asked to have returned is in the possession of the receiver today. Our motion is not asking to claw back any money from any investor. How much money is in the hands of the receiver, do you know? I believe that it's less at the time we filed our motion, I think it was less than a million dollars. There was some mischeated funds that the receiver found recently that it was seeking to recover. I believe that those were mischeated from a Lynn Smith account, but I'm not confident about that, but that was about $1.4 million. As I say, Your Honor, the primary relief that is the most important to us is prospective relief from an unlawful judgment that has no legitimate purpose today to hold it over and I should say, Your Honor, I think with the concern about floodgates, I have a different concern. Yes, we should all be concerned about opening the floodgates to too many litigants, but we should also I think in this case be more concerned about sending the wrong message to the Securities and Exchange Commission. The Securities and Exchange Commission has been told repeatedly that it is acting outside the bounds of its governing statutes and the Securities and Exchange Commission comes into this court and says nothing has changed. It would do the same thing today that it did back then. To refuse to grant relief from such an unlawful order in the face of such a brazen, unchastened argument risks promoting further overreach by the SEC, further power grabs, and further unlawful extractions of penalties that are beyond the bounds of what Congress has provided. Thank you, Your Honors. Thank you both and we'll take the matter under advisement.